# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NRO BOSTON, LLC and ALICE INDELICATO, <br><br>      Plaintiffs, <br><br> v. <br><br> KABBAGE, INC. and CELTIC BANK CORPORATION <br><br>      Defendants. <br> -------------------------------------------- <br> CELTIC BANK CORPORATION, <br><br>      Counterclaim-Plaintiffs, <br><br> v. <br><br> NRO BOSTON, LLC and ALICE INDELICATO <br><br>      Counterclaim-Defendants. | Civil Action No. 1:17-cv-11976-GAO |

## CELTIC BANK'S MEMORANDUM IN SUPPORT
## OF MOTION TO CONFIRM ARBITRATION AWARD

This case arises out of a dispute between NRO Boston, LLC and its owner Alice Indelicato (together, "NRO"), on the one hand, and Celtic Bank Corporation ("Celtic Bank") and Kabbage, Inc. ("Kabbage"), on the other hand, over the enforceability of numerous Business Loan Agreements that NRO entered into with Celtic Bank. Although NRO initially filed a lawsuit in this Court seeking to have the agreements declared unenforceable and demanding $20

million in damages, the parties subsequently agreed to resolve this dispute in binding arbitration, and this Court stayed all proceedings pending the conclusion of that arbitration.

That arbitration has now concluded. After allowing extensive discovery, conducting a five-day evidentiary hearing, and reviewing voluminous pre- and post-hearing briefing, the Arbitrator—Hon. Charles B. Swartwood, III (Ret.)—entered a July 24, 2019 Final Award rejecting NRO's efforts to have its loan agreements declared unenforceable and to obtain $20 million from Celtic Bank and Kabbage. *See* Declaration of Eric Petersen ("Petersen Decl."), Ex. 1. The Arbitrator also ordered NRO to pay Celtic Bank the amounts outstanding on its loans and reimburse Celtic Bank for the reasonable attorneys' fees and costs it incurred defeating NRO's claims and enforcing the Business Loan Agreements—as NRO agreed to do in those agreements. In total, NRO has been ordered to pay Celtic Bank $3,299,621.97. *See* Petersen Decl., Ex. 1.

NRO has not complied with the Arbitrator's decision and paid Celtic Bank the money it was awarded. Celtic Bank now asks this Court to enter an order confirming the Arbitrator's Final Award and entering judgment in Celtic Bank's favor in the amount of $3,299,621.97.

## BACKGROUND

**A.     NRO And Celtic Bank Entered Into 30 Business Loan Agreements Containing Arbitration Provisions.**

This case arises out of dozens of business loans obtained for a Boston-based sports and clothing company. Between 2014 and 2016, NRO Boston, LLC entered into 30 Business Loan Agreements with Celtic Bank. *See* Petersen Decl., Ex. 2. Its owner, Alice Indelicato, is a party to each loan agreement, and personally guaranteed each loan.

From May 2014 through April 2016, NRO borrowed more than $600,000 in business loans from Celtic Bank. Today, NRO owes more than $109,000 in outstanding principal, interest, and late fees under these business loans. NRO has not made any loan payments since

July 2016.  The Business Loan Agreements require NRO to pay costs incurred in collecting unpaid amounts due under the Business Loan Agreements, including attorneys' fees.  *See* Petersen Decl., Ex. 2.

      **B.**      **After NRO Initiates This Action, The Parties Agree To Submit The Dispute To Arbitration.**

Each of the Business Loan Agreements contains provisions requiring that all disputes between the parties be determined by binding arbitration.  Petersen Decl., Ex. 2.  The Business Loan Agreements also specify that the arbitration provisions will be governed by the Federal Arbitration Act.  Petersen Decl., Ex. 2.  Most Business Loan Agreements also allow the Arbitrator to award attorneys' fees and costs to the party who substantially prevails in any arbitration proceeding.  Petersen Decl., Ex. 2.

Despite their contractual obligation to arbitrate any dispute involving the Business Loan Agreements, NRO instead filed suit in this Court in October 2017.  *See* ECF No. 1.  In a transparent attempt to have their debts extinguished, NRO's claims rested on the dubious premise that Celtic Bank's partner, Kabbage, "originates, underwrites and funds loans to Massachusetts' business [*sic*]" and that "Celtic Bank's involvement in these loans is in name only."  Compl., ECF No. 1 ¶¶ 11, 13.  According to NRO, this makes the loans usurious under Massachusetts law.  Based on these claims, NRO accused Celtic Bank and Kabbage of violating RICO, Massachusetts's usury statute (Mass. Gen. Laws ch. 271 § 49), and Mass. Gen. Laws. Ch. 93A.  NRO also claimed that Kabbage violated the Lanham Act.

Celtic Bank and Kabbage filed a motion to compel arbitration of the claims asserted against them.  *See* ECF No. 19.  After Celtic Bank's arbitration motion was fully briefed, the parties agreed that an arbitrator should resolve the parties' dispute about the enforceability of the arbitration provisions and, if NRO's challenge to the arbitration provisions was rejected, any

claims.  *See* ECF No. 31.  This Court therefore entered an order staying this matter pending the outcome of the arbitrator's decision.  *See* ECF No. 32.

>    C.   **The Arbitrator Rejects NRO's Challenge To The Arbitration Provisions, And The Arbitration Proceeds.**

NRO selected JAMS as the arbitration administrator and initiated the arbitration in March 2018 by filing an Arbitration Demand, which incorporated by reference the Complaint that NRO had filed in this action.  Petersen Decl. ¶ 5.  In its demand, NRO sought $20 million in damages.  *Id.*

Celtic Bank and Kabbage filed counterclaims against NRO in May 2018.  The counterclaims asserted two counts for breach of contract against NRO:  one to recover damages incurred in connection with NRO's breach of the arbitration provisions, and another to recover unpaid principal and interest owed under the Business Loan Agreements.  Petersen Decl. ¶ 6.

The Honorable Charles B. Swartwood, III (Ret.), was appointed as the Arbitrator on May 18, 2018.  *See* Petersen Decl., Ex. 3.  Judge Swartwood served as a Magistrate Judge in the U.S. District Court for the District of Massachusetts from 1993 to 2005, and as the Chief Magistrate Judge in the District of Massachusetts from 2005 to 2006.  He has worked as a mediator and arbitrator at JAMS since 2006.

Following briefing and a hearing, the Arbitrator rejected NRO's challenge to the enforceability of the arbitration provisions in the Business Loan Agreements.  *See* Petersen Decl., Ex. 4.  Although Celtic Bank asked for permission to file a dispositive motion, the Arbitrator rejected that request and ordered the parties to begin discovery.  Petersen Decl. ¶ 9. The parties then engaged in significant discovery.  Celtic Bank produced more than 14,000 pages of documents, Kabbage produced more than 6,000 pages of documents, and NRO produced more 290,000 pages of documents.  *Id.* ¶ 10.  Celtic Bank deposed NRO Boston's corporate

representative and Ms. Indelicato. *Id.* ¶ 11. NRO deposed Celtic Bank and Kabbage's corporate representatives. *Id.* Each side retained two expert witnesses. *Id.* ¶ 12. Celtic Bank deposed NRO's expert witnesses. *Id.* NRO was provided with the opportunity to depose Celtic Bank' expert witnesses, but did not do so. *Id.*

The arbitration culminated in a five-day in-person evidentiary hearing that occurred from March 19-25, 2019 in Boston. *Id.* ¶ 13. The proceedings involved more than 800 exhibits and testimony from seven fact witnesses and four expert witnesses. *Id.* Following the evidentiary hearing, the parties submitted 120 pages of post-hearing briefs (plus numerous exhibits) and made closing arguments on May 23, 2019. *Id.* ¶¶ 14-15.

### D. Celtic Bank Prevails On All Claims In The Arbitration.

On July 24, 2019, the Arbitrator issued a Final Award granting Celtic Bank a complete victory.[1] Petersen Decl., Ex. 1.

The Arbitrator rejected the core premise of NRO's claims, finding that NRO has "not shown that Celtic and Kabbage entered into a sham 'rent-a-bank' partnership." *Id.* at 11. Instead, Celtic Bank's relationship with Kabbage "is not unique" and is similar to credit card and mortgage lending partnerships where banks issue loans and partner with others to administer the loan programs. *Id.* at 7. The Arbitrator also found that Celtic "not only provides the initial funding but remains thoroughly involved in supervising the lending program," *id.* at 11, such as through "exercis[ing] extensive oversight over all of these functions being performed on its behalf by Kabbage," *id.* at 7. The Arbitrator further found that Celtic Bank "has retained

---

[1] The Arbitrator had previously entered an "Interim Award" on June 5. The Interim Award contained the same factual findings and legal conclusions that appeared in the Final Award. The Interim Award permitted Celtic Bank to submit an application for fees and costs. Celtic Bank did so by submitting its fee application on June 19. NRO filed its opposition on July 3, and Celtic Bank filed its reply on July 11.

ownership/control of the loan and as a result, has assumed the risk of loss, risk of compliance, and risk to reputation." *Id.*

The Arbitrator was also sharply critical of NRO's attempts to blame Celtic Bank and Kabbage for its financial mistakes, determining that "[t]he obvious conclusion . . . is that Celtic and Kabbage and their business arrangement had nothing to do with the demise of NRO." *Id.* at 9. Instead, the Arbitrator found that NRO's financial difficulties were caused by "inexperience and mismanagement of NRO's business, the rapid expansion of the business in four separate locations, the assumption of millions of dollars of debt and excessive owner compensation." *Id.* at 8. For example, the Arbitrator found that Ms. Indelicato and her husband paid themselves nearly $1 million in excess of the industry standard from 2010-2013. *Id.* at 9.

The Arbitrator then rejected each of NRO's causes of action. *See id.* at 11-17. On the "core, threshold question of whether Claimants have shown that Celtic and Kabbage are engaged in a 'rent-a-bank' scheme", the Arbitrator noted that "Celtic bears significant monetary risk throughout these transactions", "this is a commercial lending program where Celtic not only provides the initial funding but remains thoroughly involved in supervising the loan program", and Celtic Bank "has a continuing risk of loss, risk of compliance, and risk to reputation." *Id.* at 10-11. As a result, Massachusetts's usury statute did not apply, because the statute exempts lenders like Celtic Bank that are subject to examination by another state or federal regulatory agency. *Id.* at 12. NRO also failed to prove violations of the RICO statute or Chapter 93A, and it "abandoned" its Lanham Act claim. *Id.* at 13-17.

The Arbitrator also found that NRO was liable on the counterclaims. The Arbitrator held that NRO owed $109,394.49 in unpaid principal and interest. *Id.* at 18. The Arbitrator also held that under the Business Loan Agreements, Celtic Bank was entitled to recover attorney's fees

and costs incurred (i) enforcing the arbitration provisions and (ii) in connection with the arbitration proceeding because Celtic Bank had "substantially prevailed in the arbitration." *Id.*

The Final Award consequently awarded Celtic Bank:

- $109,394.49 for unpaid amounts due under the Business Loan Agreements;

- Prejudgment interest in the amount of $14,505.48 (reflecting $29.97 per day from March 28, 2018 to July 24, 2019);

- $2,728,514.00 in legal fees; and

- $447,208.00 in costs and expenses. *Id.* at 21.

In sum, the Final Award requires NRO to pay Celtic Bank $3,299,621.97. *See id.* at 21.

## ARGUMENT

### A. The Court Should Confirm The Final Award And Enter Judgment For Celtic Bank.

The Federal Arbitration Act ("FAA") implemented "a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008). Consistent with this "national policy," motions to confirm arbitration awards should receive "streamlined treatment." *Id.* at 682; *see also Bennington Iron Works, Inc. v. J.P. Const. Co.*, 1996 WL 208494, at *1 (D. Mass. Mar. 6, 1996) (O'Toole, J.) (confirming arbitration award and noting "[t]he confirmation of an arbitration award is generally a summary proceeding that makes what is already a final arbitration award a judgment of the Court.").

The FAA permits any party to an arbitration to apply "for an order confirming the award."[2] 9 U.S.C. § 9. In general, a court "*must* grant such an order." *Id.* (emphasis added). The only exception to this rule is if the award is "vacated, modified, or corrected as prescribed in

---

[2] The arbitration agreements likewise provide: "Judgment upon any arbitration award may be entered and enforced in any court having jurisdiction." *See* Petersen Decl., Ex. 2.

sections 10 and 11 of this title." *Id.*; *see also Ortiz-Espinosa v. BBVA Sec. of Puerto Rico, Inc.*, 852 F.3d 36, 42 (1st Cir. 2017) ("Upon an application to the court under § 9 [of the Federal Arbitration Act], the court must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed in §§ 10 and 11."). On review, a court's evaluation of an arbitration award "is extremely narrow and exceedingly deferential, and is indeed among the narrowest known in the law[.]" *Raymond James Fin. Servs., Inc. v. Fenyk*, 780 F.3d 59, 63 (1st Cir. 2015) (quotations omitted). In other words, "courts are not authorized to reconsider the merits of arbitration awards." *Ortiz-Espinosa*, 852 F.3d at 48 (citations omitted); *accord United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.").

This Court should promptly confirm the Final Award. The extremely limited grounds upon which an arbitration award can be set aside under 9 U.S.C. § 10 are not present here.[3] Furthermore, no request to modify or correct the arbitration award has been made under 9 U.S.C. § 11—nor could any request be successfully made. The Final Award is the product of an arbitration that involved extensive discovery, a five-day evidentiary hearing involving numerous witnesses and hundreds of exhibits, and extensive post-trial briefing. Because the FAA provides

---

[3]  Those grounds are: (1) "where the award was procured by corruption, fraud, or undue means," (2) "where there was evident partiality or corruption in the arbitrators, or either of them," (3) "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced," (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). Although NRO and Ms. Indelicato filed a petition to vacate the arbitration award in a separate proceeding, *see* 1:19-cv-11901, they did so in violation of this Court's order to submit a status report after the arbitrator's decision, *see* ECF No. 32 ¶ 3, and to notify the Court if they wish to restore the case to the Court's active docket, *see* ECF No. 33.

the exclusive grounds for vacating, modifying, or correcting an award, there is no other basis upon which the Final Award could be set aside. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 583 (2008).

## **CONCLUSION**

The Court should enter an Order confirming the Final Award and enter judgment for Celtic Bank in the amount of $3,299,621.97.

Dated: September 9, 2019

Respectfully Submitted:

/s/ Michael Maya
MICHAEL MAYA (BBO# 672847)
ANDREW SOUKUP (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C.
Tel.: + 1 (202) 662-6000
Fax: + 1 (202) 778-5529
Email: mmaya@cov.com
         asoukup@cov.com


ASHLEY SIMONSEN (*pro hac vice* admission pending)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel.: +1 (424) 332-4800
Fax: +1 (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Celtic Bank Corporation*