# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NRO BOSTON, LLC and ALICE INDELICATO,<br><br>       Plaintiffs,<br><br>v.<br><br>KABBAGE, INC. and CELTIC BANK CORPORATION<br><br>       Defendants.<br>--------------------------------------------<br>CELTIC BANK CORPORATION,<br><br>       Counterclaim-Plaintiffs,<br><br>v.<br><br>NRO BOSTON, LLC and ALICE INDELICATO<br><br>       Counterclaim-Defendants. | Civil Action No. 1:17-cv-11976-GAO |

## CELTIC BANK'S MEMORANDUM IN SUPPORT OF MOTION FOR PREJUDGMENT ATTACHMENT

Celtic Bank Corporation ("Celtic Bank") prevailed on all claims asserted against it by NRO Boston, LLC ("NRO Boston") and Alice Indelicato (collectively, "NRO") and was awarded $3,299,621.97. *See* Declaration of Eric Petersen ("Petersen Decl."), Ex. 1. NRO has not paid the amount awarded by the Arbitrator. While Celtic Bank's request to confirm the Final Award is pending, Celtic Bank respectfully asks this Court to enter an Order attaching NRO Boston and Alice Indelicato's assets having a value of $3,299,621.97. This prejudgment relief is warranted because "there is a reasonable likelihood that [Celtic Bank] will recover judgment,

including interest and costs, in an amount equal to or greater than the amount of the attachment [or trustee process] over and above any liability insurance shown by the defendant to be available to satisfy the judgment." Mass. R. Civ. P. 4.1(c), 4.2(c).

## BACKGROUND

### A. NRO And Celtic Bank Entered Into 30 Business Loan Agreements Containing Arbitration Provisions.

This case arises out of dozens of business loans obtained for a Boston-based sports and clothing company. Between 2014 and 2016, NRO Boston, LLC entered into 30 Business Loan Agreements with Celtic Bank. *See* Petersen Decl., Ex. 2. Its owner, Alice Indelicato, is a party to each loan agreement and personally guaranteed each loan.

From May 2014 through April 2016, NRO borrowed more than $600,000 in business loans from Celtic Bank. Today, NRO owes more than $109,000 in outstanding principal, interest, and late fees under these business loans. NRO has not made any loan payments since July 2016. The Business Loan Agreements require NRO to pay costs incurred in collecting unpaid amounts due under the Business Loan Agreements, including attorneys' fees. *See* Petersen Decl., Ex. 2.

### B. After NRO Initiates This Action, The Parties Agree To Submit The Dispute To Arbitration.

Each of the Business Loan Agreements contains provisions requiring that all disputes between the parties be determined by binding arbitration. Petersen Decl., Ex. 2. The Business Loan Agreements also specify that the arbitration provisions will be governed by the Federal Arbitration Act. Petersen Decl., Ex. 2. Most Business Loan Agreements also allow the Arbitrator to award attorneys' fees and costs to the party who substantially prevails in any arbitration proceeding. Petersen Decl., Ex. 2.

Despite their contractual obligation to arbitrate any dispute they had involving the Business Loan Agreements, NRO instead filed suit in this Court in October 2017. *See* ECF No. 1. In a transparent attempt to have their debts extinguished, NRO's claims rested on the dubious premise that Celtic Bank's partner, Kabbage, "originates, underwrites and funds loans to Massachusetts' business [*sic*]" and that "Celtic Bank's involvement in these loans is in name only." Compl., ECF No. 1 ¶¶ 11, 13. NRO asserted that this makes the loans usurious under Massachusetts law. Based on these claims, NRO accused Celtic Bank and Kabbage of violating RICO, Massachusetts's usury statute (Mass. Gen. Laws ch. 271 § 49), and Mass. Gen. Laws. Ch. 93A. NRO also claimed that Kabbage violated the Lanham Act.

Celtic Bank and Kabbage filed a motion to compel arbitration of the claims asserted against them. *See* ECF No. 19. After the arbitration motion was fully briefed, the parties agreed that an arbitrator should resolve the parties' dispute about the enforceability of the arbitration provisions and, if NRO's challenge to the arbitration provisions was rejected, any claims. *See* ECF No. 31. This Court therefore entered an order staying this matter pending the outcome of the arbitrator's decision. *See* ECF No. 32.

### C. The Arbitrator Rejects NRO's Challenge To The Arbitration Provisions, And The Arbitration Proceeds.

NRO selected JAMS as the arbitration administrator and initiated the arbitration in March 2018 by filing an Arbitration Demand, which incorporated by reference the Complaint that NRO filed in this action. Petersen Decl. ¶ 5. In its demand, NRO sought $20 million in damages. *Id.*

Celtic Bank and Kabbage filed counterclaims against NRO in May 2018. The counterclaims asserted two counts for breach of contract against NRO: one to recover damages incurred in connection with NRO's breach of the arbitration provisions, and another to recover unpaid principal and interest owed under the Business Loan Agreements. Petersen Decl. ¶ 6.

The Honorable Charles B. Swartwood, III (Ret.), was appointed as the Arbitrator on May 18, 2018. *See* Petersen Decl., Ex. 3. Judge Swartwood served as a Magistrate Judge in the U.S. District Court for the District of Massachusetts from 1993 to 2005, and as the Chief Magistrate Judge in the District of Massachusetts from 2005 to 2006. He has worked as a mediator and arbitrator at JAMS since 2006.

Following briefing and a hearing, the Arbitrator rejected NRO's challenge to the enforceability of the arbitration provisions in the Business Loan Agreements. *See* Petersen Decl., Ex. 4. Although Celtic Bank asked for permission to file a dispositive motion, the Arbitrator rejected that request and ordered the parties to begin discovery. Petersen Decl. ¶ 9. The parties then engaged in significant discovery during the arbitration proceeding. Celtic Bank produced more than 14,000 pages of documents, Kabbage produced more than 6,000 pages of documents, and NRO produced more 290,000 pages of documents. *Id.* ¶ 10. Celtic Bank deposed NRO Boston's corporate representative and Ms. Indelicato. *Id.* ¶ 11. NRO deposed Celtic Bank and Kabbage's corporate representatives. *Id.* Each side retained two expert witnesses. *Id.* ¶ 13. Celtic Bank deposed NRO's expert witnesses. *Id.* NRO was provided with the opportunity to depose Celtic Bank' expert witnesses, but did not do so. *Id.*

The arbitration culminated in a five-day in-person evidentiary hearing that occurred from March 19-25, 2019 in Boston. *Id.* ¶ 13. The proceedings involved more than 800 exhibits and testimony from seven fact witnesses and four expert witnesses. *Id.* Following the evidentiary hearing, the parties submitted 120 pages of post-hearing briefs (plus numerous exhibits) and made closing arguments on May 23, 2019. *Id.* ¶¶ 14-15.

### D. Celtic Bank Prevails On All Claims In The Arbitration.

On July 24, 2019, the Arbitrator issued the Final Award granting Celtic Bank a complete victory.[1]  Petersen Decl., Ex. 1.

The Arbitrator rejected the core premise of NRO's claims, finding that NRO has "not shown that Celtic and Kabbage entered into a sham 'rent-a-bank' partnership." *Id.* at 11. Instead, Celtic Bank's relationship with Kabbage "is not unique" and is similar to credit card and mortgage lending partnerships where banks issue loans and partner with others to administer the loan programs. *Id.* at 7.  The Arbitrator also found that Celtic "not only provides the initial funding but remains thoroughly involved in supervising the lending program," *id.* at 11, such as through "exercis[ing] extensive oversight over all of these functions being performed on its behalf by Kabbage," *id.* at 7.  The Arbitrator further found that Celtic Bank "has retained ownership/control of the loan and as a result, has assumed the risk of loss, risk of compliance, and risk to reputation." *Id.*

The Arbitrator was also sharply critical of NRO's attempts to blame Celtic Bank and Kabbage for its financial mistakes, determining that "[t]he obvious conclusion . . . is that Celtic and Kabbage and their business arrangement had nothing to do with the demise of NRO." *Id.* at 9.  Instead, the Arbitrator found that NRO's financial difficulties were caused by "inexperience and mismanagement of NRO's business, the rapid expansion of the business in four separate locations, the assumption of millions of dollars of debt and excessive owner compensation." *Id.*

---

[1]  The Arbitrator had previously entered an "Interim Award" on June 5.  The Interim Award contained the same factual findings and legal conclusions that appeared in the Final Award.  The Interim Award permitted Celtic Bank to submit an application for fees and costs.  Celtic Bank did so by submitting its fee application on June 19.  NRO filed its opposition on July 3, and Celtic Bank filed its reply on July 11.

at 8.  For example, the Arbitrator found that Ms. Indelicato and her husband paid themselves nearly $1 million in excess of the industry standard from 2010-2013.  *Id.* at 9.

The Arbitrator then rejected each of NRO's causes of action.  *See id.* at 11-17.  On the "core, threshold question of whether Claimants have shown that Celtic and Kabbage are engaged in a 'rent-a-bank' scheme", the Arbitrator noted that "Celtic bears significant monetary risk throughout these transactions", "this is a commercial lending program where Celtic not only provides the initial funding but remains thoroughly involved in supervising the loan program", and Celtic Bank "has a continuing risk of loss, risk of compliance, and risk to reputation." *Id.* at 10-11.  As a result, Massachusetts's usury statute did not apply, because the statute exempts lenders like Celtic Bank that are subject to examination by another state or federal regulatory agency.  *Id.* at 12.  NRO also failed to prove violations of the RICO statute or Chapter 93A and "abandoned" its Lanham Act claim.  *Id.* at 13-17.

The Arbitrator also found that NRO was liable on the counterclaims.  The Arbitrator held that NRO owed $109,394.49 in unpaid principal and interest.  *Id.* at 18.  The Arbitrator also held that under the Business Loan Agreements, Celtic Bank was entitled to recover attorney's fees and costs incurred (i) enforcing the arbitration provisions and (ii) in connection with the arbitration proceeding because Celtic Bank had "substantially prevailed in the arbitration." *Id.*

The Final Award consequently awarded Celtic Bank:

- $109,394.49 for unpaid amounts due under the Business Loan Agreements;
- Prejudgment interest in the amount of $14,505.48 (reflecting $29.97 per day from March 28, 2018 to July 24, 2019);
- $2,728,514.00 in legal fees; and
- $447,208.00 in costs and expenses.  *Id.* at 21.

In sum, the Final Award requires NRO to pay Celtic Bank $3,299,621.97.  *See id.* at 21.

# ARGUMENT

### A. The Court Should Attach NRO Boston and Alice Indelicato's Assets To Satisfy A Future Judgment.

Rule 64 permits the Court to grant "every remedy that . . . provides for a seizing of person or property to secure satisfaction of [a] potential judgment" under "the law of the state where the court is located." Fed. R. Civ. P. 64(a). "In Massachusetts the seizure of property is governed by Mass. Gen. Laws ch. 223, §§ 42–83 (attachment) and ch. 246 (trustee process), which are implemented through Mass. R. Civ. P. 4.1 and 4.2." *Metro. Prop. & Cas. Ins. Co. v. Bos. Reg'l Physical Therapy, Inc.*, 550 F. Supp. 2d 199, 201 (D. Mass. 2008). Under Mass. R. Civ. P. 4.1 and 4.2, property may be attached "upon a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment [or trustee process] over and above any liability insurance shown by the defendant to be available to satisfy the judgment." Mass. R. Civ. P. 4.1(c), 4.2(c); *see also Santander Bank, N.A. v. Baldwin Realty, LLC*, 2015 WL 13298074 at *2 (D. Mass. Feb. 25, 2015) ("In order to obtain an order of pretrial attachment under Massachusetts law a plaintiff must demonstrate (1) a reasonable likelihood of success on the merits of its claim, and (2) a reasonable likelihood of recovering judgment equal to or greater than the amount of the attachment sought over and above any liability insurance shown by defendant to be available to satisfy judgment.").

Both requirements are easily met here. *First*, there is a reasonable likelihood that Celtic Bank will prevail on its effort to recover $3.2 million—in fact, it already has. The Arbitrator's Final Award rejected all of NRO's claims and awarded $3,299,621.97 to Celtic Bank. Petersen Decl., Ex. 1. Celtic Bank has filed a motion asking this Court to confirm the Final Award. As set forth more fully in Celtic Bank's papers filed in support of that motion, *see* ECF Nos. 35, 36

Celtic Bank is likely to obtain a judgment in its favor because a court's review of an arbitration award "is extremely narrow and exceedingly deferential, and is indeed among the narrowest known in the law[.]" *Raymond James Fin. Servs., Inc. v. Fenyk*, 780 F.3d 59, 63 (1st Cir. 2015) (quotations omitted); *see also Ortiz-Espinosa v. BBVA Sec. of Puerto Rico, Inc.*, 852 F.3d 36, 48 (1st Cir. 2017) ("[C]ourts are not authorized to reconsider the merits of arbitration awards."). Because Celtic Bank seeks attachment of assets equivalent to the amount of the Final Award, there is a reasonable likelihood that it will recover a judgment equal to the amount of attachment sought. *See, e.g.*, *Santander Bank,* 2015 WL 13298074 at *2 (ordering prejudgment attachment in the amount of $2 million because, "[i]t also appears that [plaintiff] is reasonably likely to recover more than $2 million sought, as the claimed debt is over $2 million including interest.").

*Second*, upon information and belief, neither NRO Boston nor Ms. Indelicato have liability insurance available to satisfy a seven-figure judgment. To the contrary, when NRO opposed Celtic Bank's fee application, its lawyers warned the Arbitrator that "[i]f Your Honor awards any amount more than the underlying debt, Claimants will simply be forced into bankruptcy."[2] July 3, 2019 Opp. to Celtic Bank's Application for Attorneys' Fees, Costs, and Expenses.

If Celtic Bank's motion is granted, Celtic Bank will seek to attach under Mass R. Civ. P. 4.2 any bank accounts that may be owned or controlled by NRO Boston or Ms. Indelicato. Because Celtic Bank seeks to use the trustee process for "money due under a contract in writing," Celtic Bank is not required to post a bond to obtain attachment through the trustee process. Mass. Gen. Laws Ann. ch. 246, § 1.

---

[2] Although the Arbitrator awarded more than the underlying debt, neither NRO Boston nor Ms. Indelicato have filed for bankruptcy.

Upon information and belief, the assets in NRO Boston and/or Ms. Indelicato's bank accounts do not exceed $3.2 million. Celtic Bank thus also seeks permission to attach real estate that may be owned by NRO Boston or Ms. Indelicato. According to public records, Ms. Indelicato owns an interest in the following properties:

- 15 Bird Hill Ave., Wellesley, MA 02481, which was purchased on November 17, 2014 in the amount of $1,135,000.

- 3 Oakdale Dr., Edgartown MA, 02539, which was purchased on September 16, 2011 in the amount of $412,500.

These assets may be attached under Mass. R. Civ. P. 4.1.

## **CONCLUSION**

The Court should enter an Order permitting Celtic Bank to attach NRO's assets having a value of $3,299,621.97.

Dated: September 9, 2019

Respectfully Submitted:

/s/ Michael Maya
MICHAEL MAYA (BBO# 672847)
ANDREW SOUKUP (*Pro Hac Vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C.
Tel.: + 1 (202) 662-6000
Fax: + 1 (202) 778-5529
Email: mmaya@cov.com
       asoukup@cov.com

ASHLEY SIMONSEN (*pro hac vice* admission pending)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel.: +1 (424) 332-4800
Fax: +1 (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Celtic Bank Corporation*