# Exhibit 816

**PREPARED STATEMENT OF HOSEA H. HARVEY, Ph.D.**

**"Crushed by Confessions of Judgement: The Small Business Story"**

**Before the**

**COMMITTEE ON SMALL BUSINESS**

**UNITED STATES HOUSE OF REPRESENTATIVES**

**WASHINGTON, DC**

**JUNE 26, 2019**

## INTRODUCTION

Chairwoman Velázquez, Ranking Member Chabot, and members of the Committee, my name is Hosea H. Harvey, and I am a law professor and consumer law scholar.  I appreciate the opportunity to appear before you today to discuss confessions of judgment and the proposed Small Business Fair Lending Act.  Today, I am here in my individual capacity, and not as a representative of any institution or organization.

## BACKGROUND – CONFESSIONS OF JUDGMENT

> To secure payment hereof, the undersigned jointly and severally irrevocably authorize any attorney of any court of record to appear for any one or more of them in such court in term or vacation, after default in payment hereof and confess a judgment without process in favor of the creditor hereof for such amount as may then appear unpaid hereon, to release all errors which may intervene in any such proceedings, and to consent to immediate execution upon such judgment, hereby ratifying every act of such attorney hereunder.

A confession of judgment, in its simplest form, is a contractual arrangement by which a borrower/debtor agrees to forfeit the right to contest a declaration of default by the lender/creditor. The history of confessions of judgment (also referred to as cognovit) dates back to its Latin roots,[1] or for the lawyers in the room, at least to Blackstone's era.  While Dickens wrote about confessions of judgment with scorn,[2] and some states and state courts condemned[3] or lauded[4] them centuries ago, the United States Supreme Court held in 1972 that, with respect to commercial business to business transactions, confessions of judgment are not per se unconstitutional.[5] As a result of that Supreme Court decision, a patchwork of state laws (both permitting and banning confessions of judgment) has remained until this day.

---

[1] Cognovit actionem translates roughly to "the individual has acknowledged the action."
[2] Pickwick Papers, chapter 47.
[3] Diament v. Alderman, 7 N.J.L. 197, 198 (1824).
[4] Loh v. Judge of Wayne Circuit Court, 26 Mich. 186, 188 (1872).
[5] DH Overmyer Co. v. Frick Co., 405 U.S. 174 (1972).

As committee members know, in 1985, the FTC, pursuant to its Credit Practices Rule, banned certain types of *consumer* credit provisions, including confessions of judgment.  But despite the FTC's action[6] and subsequent developments, Congress did not choose to extend this prohibition to business to business commercial transactions.  At the time, this decision was likely predicated on a number of factors, including perhaps, the presumption that business to business transactions take place between sophisticated parties on equal footing.  However, the recent Bloomberg News investigation reminds us that this is clearly an erroneous presumption.

By postulating that business to business transactions are often – if not always – on equal commercial footing, we ignore insights from consumer transactional research about how power dynamics and predatory behavior influence contract terms.  By reifying the presumption that all businesses are equals, we then can also expect that businesses always knowingly engage in commercial transactions, and that the inattention to fine-print that causes consumers to make inefficient choices does not typically arise in business to business transactions.  Yet in a world in which thousands of drivers for your app-based ride-share have their own business and can finance their enterprise with a *business* loan, perhaps the theoretical line between consumer and business credit transactions has blurred over time.  When such artificial distinctions are made between consumer and business transactions, they also elevate all business forms and transactions to a flat hierarchy, as if a small business high interest loan to renovate a bodega is functionally equivalent to a major bank's lease of a 50-story office tower.

---

[6] In 1985, the FTC specifically prohibited certain consumer transaction practices, including confessions of judgment, cognovits, and other waivers of the right to notice and opportunity to be heard in the event of suit. 16 CFR § 444.2(a)(1). The Rule applies "in connection with the extension of credit to consumers in or affecting commerce", then defines consumer as "a natural person who seeks or acquires goods, services, or money for personal, family, or household use."

**The Art of an Unfair Deal**

Commercial transactions that contain confession of judgment provisions can allow lenders in some jurisdictions to declare default and then immediately proceed to judgment and remedy without notice to the borrower.  In many states, there is also no requirement to serve a complaint or other legal process.  Upon judgment execution by the creditor, the debtor thus immediately owes both the principal and outstanding interest, and there is a high procedural bar to disputing the underlying default or debt.  For these reasons, some states, like Florida, have banned this provision for business transactions, while others, such as Ohio and, until quite recently, New York, have embraced it as a risk-shifting mechanism appropriate for commercial lending.

In theory, confessions of judgment provisions could have a modest utility in commercial transactions by reducing default costs and risk for creditors and providing struggling businesses with one last option for cash infusion.  In states where confessions of judgment are permitted, they do generally facilitate the entry of judgment for creditors without the time and legal expense associated with formal adversarial actions.  Generally speaking, the use of confessions of judgment is limited to a few key types of commercial transactions or products:  merchant cash advances (the type detailed in the Bloomberg series), short-term loans, short-term credit facilities, and business credit cards.  The use of the confession of judgment provision is viewed by those creditors as a method of last resort, and such creditors often cite default rates of 15% or more for high-risk business loans or cash advances.   But the common thread to these methods and creditors is that they engage high-risk debtor clients.  As such, some scholars think about confessions of judgment as economically efficient vehicles by which creditors can balance risk by enabling quick relief when debtors fail to pay monies owed.  In some cases this is true, but in others, as demonstrated

today, the lack of due process protections in some states leaves such transactions ripe for abuse. The inconsistency across state laws also exacerbates the potential for abuse.

**View from the States – A Fraying Patchwork Quilt**

The state-level approach to commercial confessions of judgment is a fraying patchwork quilt, reflective of a variety of political and historical contexts.   Many states that do permit confessions of judgment in commercial transactions do not provide for substantive due process or procedural safeguards.  Rather, the focus in those states is on compliance with technical procedure and a limited number of formal criteria, such that the confession of judgment be in writing, under oath, executed by both sides, and tied directly to the credit instrument, including any extensions or assignments.   This over-emphasis on process and procedure, instead of transactional fairness, is rooted in the unique way that Congress, among other institutions, has chosen to somewhat artificially segregate the regulation of commercial credit transactions from consumer credit transactions.  This transactional Maginot Line reinforces the perception that businesses are all on equal footing, are all equally as sophisticated, and thus market-forces are the best vehicle to curb potentially abusive commercial transactions.   The Small Business Lending Fairness Act appropriately eliminates this false dichotomy.

There have been very few studies of the patchwork of state-laws regulating the use of confessions of judgment in commercial transactions.[7]  However, within this state-level patchwork, and absent federal regulation, a number of key policy differences emerge.   Some of these differences are particularly interesting for scholars of civil procedure or Constitutional law, such as whether certain courts have jurisdiction over the defendant debtors from other states or whether

---

[7] But see H. Ward Classen, Jeanne de Cervens, Robert K. Rowell and  James C. Wine, *A Survey of the Legality of Confessed Judgment Clauses in Commercial Transactions*, The Business Lawyer, Vol. 47, No. 2 (February 1992), pp. 729-772.

courts in states that do not enforce such judgments still have to give full faith and credit to the judgments of courts in states that do enforce confessions of judgment.  But the parts of this patchwork that are most relevant to this Committee involve whether federal consumer law prohibitions on practices that we find fundamentally unfair in one context should be extended to business transactions that may also result in fundamentally unfair outcomes.

The state-law patchwork referenced earlier suggests that Congressional action could bring uniformity and consistency to this space and could reduce disparate outcomes, such as those discussed today.  More than half the states have few to no restrictions on confessions of judgment in commercial transactions.  The remaining states either generally prohibit confessions of judgment in commercial transactions or have a common law approach in some circumstances.  For the minority of states that generally prohibit commercial confessions of judgment provisions, this is not a particularly partisan issue.  For example, Alabama, Arizona, Georgia, Idaho, Kentucky, and Texas are joined by the District of Columbia, New Jersey, Rhode Island, and Wisconsin, amongst others, in generally prohibiting the practice.   And even corporate-friendly states like Delaware, which does enforce confessed judgment provisions, still requires the debtor receive notice and allows for procedural challenges about whether they knowingly agreed to the provision.  Similarly, California's safeguards include that an "independent" attorney has advised the judgment debtor about the consequences of waiving certain rights and defenses.  Pennsylvania requires 30 days' notice and a debtor's chance to be heard.  Finally, while Ohio generally permits them with few restrictions, so did New York, which is poised to finally end its role in the practice this week.

Because state laws vary so much in this space, Congressional action would result in market disruption for companies that routinely use such provisions.  Such action requires balancing both the increased transactional efficiency that would result from a standard rule and the reduced

potential for abuse against concerns that such a rule may prevent credit access for cash-strapped small businesses. Further, it requires that Congress consider alternative remedies for the abuses described here today.

Those opposed to an outright prohibition on commercial confessions of judgment would argue that market-forces, state-level action, disclosure rules, or transaction size limits may help reduce any ongoing disparities. However, market forces did not appear to reduce the frequency of abuses described in the Bloomberg investigation. And, the majority of states still permit confessions of judgment for commercial transactions, suggesting a form of legislative inaction. And, while disclosure might be heightened to include more robust warnings or more visible typeface, it is not clear that such disclosure would have its intended effects for transactions in which the borrower is already cash-strapped or does not have access to more traditional small business loans. Nonetheless, some states that do permit confessions of judgment could create additional disclosure regimes designed to better inform and protect small businesses from predatory commercial transactions. For example, California's Small Business Truth-in-Lending Law (2018), brings the traditional consumer disclosure regime to "commercial financing" for transactions between $5,000 and $500,000, and is limited to non-depository institution creditors. But despite incremental efforts to bring fairness to this space at the state level, Congressional action is the most efficient – and most effective – solution.

**The Proposed Solution**

Chairwoman Velázquez, joined by Representative Marshall, Senators Rubio and Brown, and others, recognizes that contractual provisions that deny due process and punish small businesses serve no compelling purpose. The Small Business Lending Fairness Act rests on sound evidentiary footing, codifying and extending the FTC's 1985 ban on consumer confessions of

judgment to include small business owners as well.   By amending TILA to include a general prohibition on confessions of judgment provisions for business loans as well, Congress can act to prevent the abuses described here today and begin to engage a larger dialogue recognizing that many commercial transactions are to businesses that are owned and operated by a single individual. This proposed solution is neither partisan nor anti-business.  For that reason, the Small Business Finance Association also supports prohibiting such provisions in commercial transactions.    And while the SBLFA does not directly address penalties, methods of enforcement, and whether such a prohibition will be retroactive, presumably the FTC, should it be the appropriate regulator, will resolve those details.

Sometimes a short, simple, straightforward law can be the most effective approach to solving difficult problems.   And so, today, just hours before the 50th anniversary of the implementation of the Truth in Lending Act, this Committee's consideration of the Small Business Lending Fairness Act and Chairwoman Velázquez's efforts to highlight disparities and abuse of confessions of judgment in commercial transactions are   logical and necessary extensions of TILA's original principles and purpose.   I thank the Committee for its efforts and for the opportunity to testify this morning.